| | |
|---|---|
| MICHAEL C. WORSHAM <br> 1916 Cosner Road <br> Forest Hill, Maryland 21050 <br> *Plaintiff* <br> v. <br> MONITRONICS INTERNATIONAL, INC. <br> 2350 Valley View Lane, Suite 100 <br> Dallas, TX 75234-5736 <br><br> Serve on: CT Corporation System <br> 1999 Bryan St., Suite 900 <br> Dallas, Texas 75201 <br><br> ALLIANCE SECURITY, INC. <br> 60 Jefferson Park Road <br> Warwick, RI 02888 <br><br> Serve on: Sheldon Chamratz, same address <br><br> *Defendants* | IN THE CIRCUIT COURT <br><br> FOR HARFORD COUNTY, MARYLAND <br><br> Case #: 12-C-15- 1744 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

The Plaintiff, Michael C. Worsham, sues the Defendants for federal and Maryland TCPA telemarketing violations, for making pre-recorded voice telemarketing solicitation calls to Plaintiff's telephone number that is on the National Do Not Call list registry, to advertise and solicit their home security equipment, installation, and monitoring. Defendants' telemarketing included transmission of fake caller ID, fake caller names, and repeated hang-up calls without leaving any message.

## PARTIES

1. Plaintiff Michael C. Worsham resides in Harford County, Maryland, and has been the subscriber to his cellular (wireless) telephone number 410-557-6192 at all times relevant to this suit, a number which has been on the National Do Not Call (DNC) list since July 15, 2006, and which is used as a residential line.

2. Defendant **MONITRONICS INTERNATIONAL, INC.** ("Monitronics") is a Texas for-profit corporation with its main office in Dallas, TX.

3. Defendant **ALLIANCE SECURITY, INC.** is a Delaware corporation with a main office in Warwick, RI.

## JURISDICTION

4. The Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S. Code § 227(b)(3), provides for a private right of action in state or federal court for violations of the TCPA and for violations of the regulations promulgated pursuant to the TCPA by the Federal Communications Commission (FCC) at 47 C.F.R. Part 64, Subpart 1200.

## ALLEGATIONS

### Defendants' telemarketing calls

5. Defendants, individually and in concert with others, and through the mutual assistance of one another and others, engaged in a conspiracy to call consumers, including at phone numbers that are on the National Do Not Call (DNC) list Registry, using an automatic telephone dialing system (ATDS), to make artificial or prerecorded voice calls for the purpose of encouraging people to buy their home security related products or services.

6. Defendants transmit false or spoofed Caller ID numbers and/or information.

7. Plaintiff can't call back Defendants at the Caller ID numbers transmitted by Defendants.

8. Defendants' prerecorded telemarketing messages identify a false name of the supposed caller, and the prerecorded voice asks the call recipient questions, and then transfers the call to a live sales representative or agent of one of the Defendants.

9. Two of the names in Defendants' prerecorded messages were "Jessica" and "Nicole".

10. Plaintiff did not have to press number to be transmitted to the Defendants' live agents.

11. Defendants' prerecorded messages did not give Plaintiff an option to stop the calls.

12. Defendants' prerecorded message mentioned, are not part of a real or legitimate survey, but a ruse to deceive the call recipient.

### Defendants called Plaintiff's wireless and residential number at least 10 times

13. Plaintiff alleges he received the following calls from Defendants and possibly other companies Defendants conspired with to call Plaintiff's number 410-557-6192:

2

### 2 Prerecorded calls made to 410-557-6192

| | Date | Time | Caller ID | Length | Message |
|---|---|---|---|---|---|
| 1. | Nov. 7, 2014 | 11:45 AM | 603-414-1920, New Hampshire | 1 min. | Prerecorded |
| 2. | May 28, 2015 | 5:25 PM | 772-236-0990, Florida | 1 min | Prerecorded |

### 4 Calls from non-existent 443 area code numbers to 410-557-6192

| | Date of Call | Time of Call | Caller ID display | Length | Message |
|---|---|---|---|---|---|
| 3. | March 24, 2015 | 6:04 PM | 443-024-5698 Unavailable | 0 | None |
| 4. | April 29, 2015 | 6:38 PM | 443-064-7624 Unavailable | 5 sec. | None |
| 5. | June 3, 2015 | 10:57 AM | 443-024-7268 Unavailable | 18 min. | Prerecorded |
| 6. | June 10, 2015 | 9:55 PM | 443-062-3864 Unavailable | 3 sec. | None |

### 4 Calls from 440-305-7095 to 410-557-6192

| | Date | Time | Caller ID display | Call length | Message |
|---|---|---|---|---|---|
| 7. | June 3, 2015 | 12:18 PM | 440-305-7098 Unavailable | 0 | None |
| 8. | June 4, 2015 | 8:14 PM | 440-305-7098 Unavailable | 14 seconds | None |
| 9. | June 5, 2015 | 12:21 PM | 440-305-7098 Unavailable | 8 seconds | None |
| 10. | June 6, 2015 | 11:59 PM | 440-305-7098 Unavailable | 12 minutes | Prerecorded |

Plaintiff may have also received calls on other dates from Defendants or agents or contractors as part of Defendants' telemarketing conspiracy and over which Defendants exercise control, using different Caller IDs and prerecorded messages, but can not be certain because Defendants hide who they are, by using fake or incomplete Caller ID, no names or fake names in the messages, fail to identify themselves in the messages, fail to include a phone number in the messages, fail to transmit Caller ID, and may even fail to tell their own employees who the calls are transferred to all of the entities who are responsible for the calls.

### Details of specific calls from Defendants

### November 7, 2014 prerecorded Call #1 from 603-414-1920 to 410-557-6192

14. On November 7, 2014 Defendants delivered an artificial or prerecorded voice message to Plaintiff's wireless number with a prerecorded voice, that started saying that the FBI reports a break in every 15 seconds.

15. Plaintiff either pressed a button, or else the call rolled over and transferred Plaintiff to a live sales person, who identified herself as Latoya with the "home security department."

16. Latoya started to give a sales spiel, but as soon as Plaintiff said he could not talk right now, she hung up and the call ended.

3

### May 28, 2015 - Prerecorded Call #2 from 772-236-0990 to 410-557-6192

17. On May 28, 2015 Defendants delivered a prerecorded message to Plaintiff's wireless number with a prerecorded woman's voice, that started with something about FBI statistics, and an offer to put a free sign in Plaintiff's yard for security purposes.

18. Plaintiff pressed "1 to try to learn the identity of the caller, and a young man came on the line who said his name was Sean (?) with the security department.

19. Sean asked Plaintiff if he was the homeowner, and Plaintiff said "Yes I am", and then the call disconnected.

### June 3, 2015 - Prerecorded Call #5 from 443-024-7268 to 410-557-6192

20. On June 3, 2015 Defendants delivered a prerecorded message with a voice saying "Hello this is Jessica." The prerecorded voice asked interactively "How are you today?" and after Plaintiff's verbal response, Plaintiff was automatically transferred to a live salesperson who identified himself as David Miller.

21. Mr. Miller described Defendants' home security monitoring system, including a central censor, 2 censors on each floor, a new control panel, and that the system and installation were free, and there would only be a charge for monitoring for 5 years. The monitoring fee was $36.99/month or $42.99/month for a wireless system. He said there was a warranty, and Plaintiff could get a discount on his homeowner's insurance.

22. After describing the system, Mr. Miller finally identified that Alliance Security would install the system, and Monitronics would do the monthly monitoring. He scheduled an appointment for June 5, 2015 for technician Mike Kirby with Alliance, 877-756-2559, to explain the system at Plaintiff's home. Mr. Miller gave 973-727-7250 as the Promotions Dept. number.

23. Later on June 3, 2015 at 7:16 PM, Steve with Monitronics called Plaintiff from 561-252-1878, Florida, regarding the June 5 appointment with Mike Kirby, a call for which Plaintiff is not alleging at this time was a violation of the TCPA.

24. On June 4, 2014 at about 2:30 PM, Plaintiff called Alliance Security at 877-746-2559 number that Mr. Miller had given him the day before. He first spoke with a Samantha, who transferred Plaintiff to someone named David, with whom Plaintiff cancelled the June 5, 2014 appointment, and told David not to call Plaintiff.

25. On June 4, 2015 shortly after calling Alliance (at 2:30) and cancelling the June 5, 2014 appointment with Mr. Kirby, Plaintiff contacted both Alliance and Monitronics (at about 2:45 PM) through there respective web sites contact pages, and cancelled the June 5th appointment there as well, and told both Alliance and Monitronics in his June 4, 2015 contacts to them through their respective web sites not to call Plaintiff.

4

### June 6, 2015, Prerecorded Call #10 from 440-305-7098 to 410-557-6192

26. On June 6, 2015 Defendants delivered a prerecorded message to Plaintiff's number with a prerecorded voice identifying itself as Nicole, who said things like "We will be in your area", and mentioned a wireless GE system, and then the prerecorded voice asked several questions interactively, and after Plaintiffs' responses, Plaintiff was automatically transferred to a live operator who identified himself as Don (?).

27. Don described their 2-way voice technology system, and asked a few questions, such as how many exterior doors were in Plaintiff's house, and mentioned a 120dB siren, battery back up, and a move out guarantee.

28. Don told Plaintiff the $99 activation fee would be waived, and the monitoring fee was $47.00 per month for 5 years, and then month to month.

29. Don finally stated that he was with Alliance Security, and that the monitoring would be done by Monitronics. Don gave his number as 888-336-9616 from 9:30-6:30 PM.

30. Don tried to set up an appointment with Plaintiff that same night, on June 6, 2015, and when Plaintiff told Don he was going out, Don then tried to set up an appointment that same afternoon about 2 hours after the same call he was then having with Plaintiff. Plaintiff told Don he would call Monday in order to get off and end the call.

### Additional Allegations

31. Defendants' calls were initiated to deliver a prerecorded voice solicitation message.

32. Defendants are not identified during any part of the prerecorded voice messages.

33. Defendants exercised decision-making control over their respective policies, procedures and business practices, and made the decisions causing the violations.

34. Defendants conspired to called Plaintiff's number despite the number being on the national DNC registry, using pre-recorded voices, and intentionally did not leave a message in many of the calls, provide a phone number, or identify themselves during the prerecorded messages or in the Caller ID that they transmitted.

35. The purpose of Defendants' telemarketing and of the calls is to encourage purchase or rental of, or investment in, property, goods, or services offered by Defendants.

36. Defendants' prerecorded calls all failed to transmit or include the actual name of the caller.

37. Defendants' Calls #3 to 6 failed to transmit or include Defendants' phone number, and the numbers appearing on Plaintiff's Caller ID were not just fake or spoofed numbers, but completely non-existent numbers, because phone numbers can not start with a "0".

5

38. The name of the telemarketer is available for Caller ID transmission by both Plaintiff's and Defendants' carriers (including any contractors or agents used by Defendants).

39. Plaintiff's Caller ID equipment can and regularly does transmit the name of the caller, and both his and the Defendants' carriers are capable of transmitting the name of the caller.

40. Plaintiff has no business relationship of any kind with, and did not gave any prior permission to be solicited by any Defendant or their affiliates, agents, contractors or partners.

41. Defendants' calls to Plaintiff could not have been possible without Defendants' conspiracy with other persons or entities with whom Defendants conspired to call Plaintiff, including the person(s) or entities who provided the:
(1) voice in the prerecorded voice message, (2) script for the prerecorded voice message, (3) list of phone numbers to be called including Plaintiff's number, (4) equipment to dial numbers and deliver the prerecorded voice message to Plaintiff, (5) non-working or fake number that appeared on Plaintiff's Caller ID, (6) prerecorded message heard if Plaintiff called a number appearing on Plaintiff's Caller ID, and (7) advice on telephone solicitations and creating and delivering prerecorded message.

### Automatic Dialing and TCPA Allegations

42. Defendants' calls were all initiated and made with an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2).

43. Defendants' telephone calls to Plaintiff violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b), and the FCC's regulations promulgated pursuant to the TCPA located at 47 C.F.R. § 64.1200.

44. Defendants' telephone calls to Plaintiff violated the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6601-6108, as implemented by the Federal Trade Commission (FTC) in the Telemarketing Sales Rule, 16 C.F.R. Part 310.

45. Defendants made and assisted substantially to the initiation of telephone solicitations to the Plaintiff in violation of the TCPA and FCC regulations; on, but possibly not limited to, the dates listed in this Complaint.

46. Defendants personally and substantially participated to help arrange for the solicitation calls to be initiated and ultimately delivered to Plaintiff's phone number(s).

47. Defendants made more than one call within a one year period to Plaintiff in violation of the TCPA and the FCC and FTC regulations.

48. FCC regulations 47 C.F.R. § 64.1200(d)(4) and 47 C.F.R. § 64.1601(e) were promulgated pursuant to U.S.C. § 227(b)(2).

49. Defendants are *telemarketers* engaged in *telemarketing* as defined by the FCC and FTC.

## Willful and Knowing Conduct Allegations

50. Defendants conspired to call Plaintiff and many others in Maryland knowing that they would be calling into Maryland.

51. Defendants through their conspiracy to call Plaintiff and others in Maryland had numerous, substantial and continuous contacts with Maryland during their calls.

52. Plaintiff's 410-557-6192 number has been on the national DNC list registry continuously since July 15, 2006 and prior to and at the time of all of Defendants' calls.

53. Defendants willfully ignore the national DNC list.

54. Defendants failed to pay the annual fee for access to telephone numbers within Plaintiff's area code 410 that are included on the national DNC list Registry maintained by the FTC.

55. On May 11, 2011 Defendant Monitronics was sued in a class action in the Circuit Court of Ohio County, West Virginia by Plaintiff Diana Mey for TCPA violations, alleging that Monitronics called Mey over 10 times with a company called Versatile Marketing Solutions.

56. Monitronics was sued in several other TCPA class actions, which were combined with the *Mey* case in a multi-district case as *In re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, N.D. West Virginia, MDL Case #1:13-md-2493.

57. Plaintiff alleges that Alliance Security was aware of the TCPA and that Monitronics had been sued for TCPA violations by Mey and others, prior to any calls made to the Plaintiff.

58. Defendants are all aware and know about, and approve of, the telemarketing calling patterns and practices used in any of their calling centers and/or used by of their agents or contractors.

59. Defendants all profited by and through the telemarketing calling patterns and practices their or their agents or contractors use and through their conspiracy to call and as part of the calls.

60. Defendants all ratified the acts and conduct of all person involve in the calls, including but not limited to employees, agents or contractors calling on their behalf, including any used to call Plaintiff, and profited by the ratification of these acts.

61. Defendants willfully and knowingly failed to clearly identify themselves or the individual callers during the calls, and specifically did not provide the name of the individual callers, the names of the person or entity on whose behalf the call is being made, and any telephone number other than that of the autodialer which initiated or placed the call.

62. Defendants' violations were done '*willfully*' and '*knowingly*,' as the term '*willful*' is defined at 47 U.S.C. § 312(f) and 47 U.S.C. § 503(b), and as the term '*knowingly*' is defined in 47 U.S.C. § 223(b)(1), and as both of these terms are interpreted by the FCC.

## COUNTS 1-4 : TELEPHONE CONSUMER PROTECTION ACT VIOLATIONS

Plaintiff re-alleges all preceding paragraphs as if fully set forth herein, and further alleges that:

### COUNT 1 : Failure to honor the National Do Not Call (DNC) list Registry

63. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(c)(2), which prohibit telephone solicitations to a number registered on the National DNC registry.

### COUNT 2 : Calling a wireless and residential number without prior express consent

64. Defendants' Calls violated the TCPA at 47 U.S.C. § 227(b)(1)(A)(iii), and a similar FCC regulation at 47 C.F.R. § 64.1200(a)(1)(iii), which provides that *"(1) Prohibitions: It shall be unlawful for any person . . . (A) to make any call (other than a call made for emergency purposed or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice - (iii) to any telephone number assigned to a paging service, cellular telephone service . . ."*

or in the alternative it is plead for this Count that:

Defendants' Calls violated the TCPA, 47 U.S.C. § 227(b)(1)(B), and FCC regulation at 47 C.F.R. § 64.1200(a)(3), which makes it unlawful *"to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."*

### COUNT 3 : Failure to identify a telemarketer and their telephone number

65. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(d)(4), which requires that *"A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."*

### COUNT 4 : Failure to transmit full and complete Caller ID information

66. Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1601(e)(i), which requires that *"Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(7) must transmit caller identification information . . .* [and] *must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer."* and also violates the FTC's similar provision at 16 C.F.R. § 310(a)(7).

### MARYLAND TELEPHONE CONSUMER PROTECTION ACT (MD-TCPA)

Plaintiff incorporates the above allegations, and further alleges the following violations of the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-14-3202, which prohibits a person from violating the federal TCPA and/or the FCC and/or FTC telemarketing regulations, and which makes each prohibited telephone solicitation and each prohibited practice during a telephone solicitation a separate violation:

### COUNTS #5-8

67. **Count 5**: Defendants' violations in Count #1 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

68. **Count 6:** Defendants' violations in Count #2 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

69. **Count 7:** Defendants' violations in Count #3 above also violate the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

70. **Count 8:** Defendants' violations in Count #4 above also violates the MD-TCPA, Maryland Annotated Code, Commercial Law Art. §§ 14-3201-3202.

### COUNT 9 : Failing to provide an automated interactive voice opt out mechanism

71. **Count 9:** Defendants' Calls violated the TCPA and FCC regulations at 47 C.F.R. § 64.1200(b)(3), which requires that *"All artificial or prerecorded voice telephone messages*

*shall: . . .(3) In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or [wireless numbers] . . . provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section.*" and also violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

### Counts 10-13

### FTC Telemarketing Sales Rule (TSR) violations which also violate the Maryland TCPA

72. **Count 10:** Defendants' Calls violate 16 C.F.R. § 310.4(b)(1)(iii)(B), the FTC regulation which prohibits initiation of "*any outbound telephone call to a person when . . . (B) That person's telephone number is on the "do-not-call" registry,*" and this violation also violates the Maryland TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

73. **Count 11:** Defendants' Calls violates 16 C.F.R. § 310.8(a), the FTC regulation which makes it a violation of the TSR for "*any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly, or through another person, first has paid the annual fee, required by § 310.8(a), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission,*" which violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

74. **Count 12:** Defendants' Calls violate 16 C.F.R. § 310.5(d)(1), the FTC regulation which requires that a telemarketer "*disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . . .(1) The identity of the seller; (2) That the purpose*

10

*of the call is to sell goods or services; (3) The nature of the goods or services."* which violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

75. **Count 13:** Defendants' Calls violate 16 C.F.R. § 310.4(a)(8), the FTC regulation which prohibits "(8) *Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call."*, which violates the MD-TCPA, Maryland Ann. Code, Commercial Law Art. §§ 14-3201-3202.

## REQUESTED RELIEF

76. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

77. Each failure on a separate occasion by any Defendant or its conspiring partners, employees, agents or contractors to comply with the TCPA or FCC or FTC regulations constitutes a separate violation of the federal TCPA, Maryland TCPA, and FTC regulations.

### Federal TCPA Damages

78. The TCPA, 47 U.S.C. §§ 227(b)(3) and (c)(5) provides an explicit private right of action for $500 in statutory damages for each violation of the TCPA or an FCC regulation issued under the TCPA pursuant to 47 U.S.C. § 227(b).

79. The TCPA, 47 U.S.C. §§ 227(b)(3) and (c)(5) explicitly provide for up to triple damages if a Defendant willfully or knowingly violates the TCPA or the FCC regulations.

80. **Counts 1 to 4**: Plaintiff demands $1,500 for each separate violation of the TCPA and/or the FCC's TCPA regulations, including triple damages for each willful or knowing violation of the TCPA or FCC regulations, which for 10 calls is **$15,000 in federal TCPA statutory damages** for each of the 4 Counts, or **$60,000 in federal TCPA statutory damages**.

81. The TCPA, 47 U.S.C. § 227(b)(3)(A) and § 227(c)(5)(A) provide for injunctive relief to enjoin violations of the FCC's regulations prescribed under the TCPA.

82. Plaintiff requests injunctive relief prohibiting the Defendants and all persons under their control from calling Plaintiff and other persons in Maryland in violation of the TCPA.

### Maryland TCPA Damages

83. **Counts 5 to 13**: For each of the 10 calls identified so far, Plaintiff demands $500 for each of the 9 separate violation of the Maryland TCPA in Counts 5 to 13, pursuant to Maryland Commercial Law Art. § 14-3202(b)(2), and reasonable attorneys fees as may be applicable.

84. Plaintiff seeks under the Maryland TCPA: 10 calls x 9 Maryland TCPA violations x $500/violation = **$45,000 in Maryland TCPA statutory damages.**

WHEREFORE the Plaintiff seeks from the Defendants jointly and severally $60,000 in federal and $45,000 in Maryland statutory damages, for a **Grand Total of $105,000** damages sought for the telemarketing solicitation violations identified thus far, an injunction prohibiting the Defendants or any persons under their control from calling or assisting with calling any persons in Maryland in violation of the TCPA or FCC regulations, reasonable attorneys fees as may apply, costs, and other such relief as is just and necessary.

### JURY TRIAL DEMAND

The Plaintiff requests a trial by jury for all matters triable by a jury.

Respectfully submitted,

*Michael C. Worsham*

Michael C. Worsham, Plaintiff, Pro Se
1916 Cosner Road
Forest Hill, Maryland 21050
410-557-6192

June 15, 2015